IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SONNY RAMDEO<br>Reg No. 80568-053<br>RRM Orlando,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS<br>320 First Street, N.W.<br>Washington, D.C. 20534<br><br>COLETTE PETERS, *in her official capacity as Director of the Bureau of Prisons*,<br>320 First St NW<br>Washington, D.C. 20534,<br><br>*Respondents*. | Case: 1:25-cv-00185<br>Assigned To : Sooknanan, Sparkle L<br>Assign. Date : 1/13/2025<br>Description: Habeas Corpus/2255 |

**EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2241 WITH INCORPORATED MEMORANDUM OF LAW**

**COMES NOW** Sonny Ramdeo, appearing pro se, by and through this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and alleges as follows:

**I.  INTRODUCTION**

1.  Petitioner Sonny Ramdeo (Reg. No. 80568-053) is a federal inmate incarcerated under the delegated supervision of Residential Reentry Manager Orlando in the Middle District of Florida, serving a sentence imposed by the United States District Court for the Southern District of Florida, *United States v. Ramdeo*, 12-cr-80226 (S.D. Fla). He brings this emergency action to challenge his continued unlawful detention caused by the Bureau of Prisons (BOP) systemic failure to apply his earned time credits (FTC) under the First Step Act (FSA) despite explicit statutory and regulatory mandates requiring their application.

RECEIVED
Mail Room
JAN 13 2025
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

2. On December 12, 2024, President Biden granted Petitioner a commutation, reducing his original 240-month sentence to 173 months and 19 days, with a new expiration date of April 11, 2025. See, Office of the Pardon Attorney, Executive Clemency Grant – December 12, 2024, available at https://www.justice.gov/pardon/media/1380216/dl?inline (last visited January 6, 2025)

3. Under 28 C.F.R. § 571.41(a), the Bureau of Prisons is required to recalculate an inmate's sentence following a Presidential commutation to ensure the commutation is implemented as written and in accordance with applicable laws.

4. Petitioner earned sufficient FTC through participation in evidence-based recidivism reduction programs under 18 U.S.C. § 3632(d)(4) to qualify for early transfer to supervised release. BOP Policy Statement 5410.01 mandates that the first 365 days of earned time credits must be applied to advance an inmate's transfer to supervised release before considering prerelease custody options such as home confinement.

5. The commutation order explicitly stated that "nothing in this grant of clemency should be presumed to interfere with, or supersede, the Bureau of Prisons' authority to oversee each person's confinement, pursuant to the terms set forth in this grant of clemency."

6. The statute is clear: time credits "*shall[1] be applied* toward time in prerelease custody or supervised release," and the BOP "*shall transfer* eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). The BOP's failure to comply with these statutory and regulatory requirements has resulted in Petitioner's continued incarceration, in violation of federal law, Presidential clemency, and the intent of the First Step Act. This failure undermines not only the First Step Act but also Congress's intent under 18 U.S.C.

---

[1] 28 C.F.R. 500.1(e) defines "shall" as an obligation is imposed. *Shall* in a statute does not translate into "may" under rulemaking.

§§ 3624(g) and 3624(b), which require the mandatory application of earned and good conduct credits to reduce incarceration length and facilitate timely release.

7. Despite the commutation order preserving the BOP's statutory authority, the Bureau failed to recalculate Petitioner's sentence to reflect his accrued FTC, even while applying Good Conduct Time (GCT), another statutorily mandated credit.

8. This failure not only undermines the First Step Act's statutory and rehabilitative intent but also creates a precedent of systemic disregard for federal mandates, eroding public trust in the BOP's adherence to legal obligations.

9. The Bureau of Prisons' failure to take ownership of Petitioner's case and the circular deflection of responsibility among its offices represent a systemic failure to implement the First Step Act and Presidential commutations. This bureaucratic inaction highlights the necessity of judicial intervention.

10. Pursuant to 28 U.S.C. § 2243, Petitioner respectfully requests that this Court order Respondents to show cause within three days why the writ should not be granted, given the ongoing deprivation of liberty and irreparable harm caused by the Bureau's failure to comply with its statutory obligations. Each additional day of unlawful detention compounds the irreparable harm to the Petitioner and undermines the statutory intent of the First Step Act.

**II.    JURISDICTION AND VENUE**

11. This Court has jurisdiction over this petition pursuant to 28 U.S.C. § 2241 because Petitioner is in custody in violation of federal law.

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the BOP Central Office is located in Washington, D.C., and senior officials based in Washington, D.C., are the

ultimate custodians responsible for implementing the First Step Act and recalculating Petitioner's sentence.

### III.  PARTIES

13. Petitioner Sonny Ramdeo (Reg. No. 80568-053) is a federal inmate currently incarcerated in Orlando under the custody of the Residential Reentry Manager.

14. Respondent Colette S. Peters, Director of the Bureau of Prisons, bears ultimate responsibility for ensuring compliance with statutory and regulatory obligations under the First Step Act.

### IV.  FACTUAL BACKGROUND

15. Under the First Step Act (FSA), Petitioner earned substantial First Step Act Time Credits (FTC) for his active participation in evidence-based recidivism reduction programs. See 18 U.S.C. § 3632(d)(4). These credits are statutorily mandated to reduce incarceration length and facilitate early transfer to supervised release or prerelease custody. See 18 U.S.C. § 3624(g).

16. Petitioner's Pre-Commutation Sentence Computation, dated May 19, 2024, confirms his eligibility for both Good Conduct Time (GCT) under 18 U.S.C. § 3624(b) and First Step Act Time Credits (FTC) under 18 U.S.C. § 3632(d)(4). These credits, combined, are statutorily mandated to reduce incarceration length and facilitate early transfer to supervised release or prerelease custody. See Exhibit 'A' – Pre-Commutation Sentence Computation dated May 19, 2024, "VIA FSA REL." The recalculation process required under 28 C.F.R. § 571.1(a) must incorporate these statutory credits, integral to ensuring compliance with federal law and providing eligible prisoners the benefits Congress intended. FTC and GCT serve distinct statutory purposes but are both mandatory components of the recalculation process under 28 C.F.R. § 571.1(a). The failure to apply either credit creates a significant statutory violation.

17. Under 18 U.S.C. § 3624(b)(1), Good Conduct Time (GCT) allows prisoners serving terms exceeding one year to receive credit of up to 54 days per year of their sentence, provided they display exemplary compliance with institutional regulations. This GCT is applied automatically and reduces the term of imprisonment. The commutation order does not negate this statutory entitlement, and the BOP is required to recalculate Petitioner's GCT post-commutation to ensure the proper adjustment of his sentence. Good Conduct Time (GCT) is applied automatically to eligible prisoners who meet statutory criteria. This recalculation is not discretionary and must align with the application of FTC to ensure compliance with federal mandates.

18. BOP Policy Statement 5410.01[2] explicitly requires the application of FTC to advance an inmate's transfer to supervised release before considering prerelease custody options such as home confinement or placement in Residential Reentry Centers (RRC). *Id.* cf. FSA REL (FSA time credits and GCT)[3] vs. GCT REL (Good Conduct Time only).

19. On December 11, 2024, President Biden granted Petitioner a commutation, reducing his original 240-month sentence to 173 months and 19 days, with a new expiration date of April 11, 2025. *See*, Exhibit 'B' – *Commutation List.*[4]

20. The commutation order expressly stated in the relevant part:

> *".... Nothing in this grant of clemency should be presumed to interfere with, or supersede, the Bureau of Prisons' authority to oversee each person's confinement, pursuant to the terms set forth in this grant of clemency.*

---

[2] *First Step Act of 2018: Procedures for Implementation of 18 U.S.C. 3624(d)(4)*, available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf
[3] Includes application of FSA Earned Time Credits.
[4] This list includes all affected inmates for whom the Bureau of Prisons (BOP) failed to apply earned time credits under the First Step Act (FSA). The commutation applies to individuals transferred to home confinement under the CARES Act, all of whom were eligible for the FSA with a PATTERN risk level of minimum or low. As of the date of the commutation, December 11, 2024, these individuals had accrued sufficient earned time credits to qualify for immediate release.

21. Consistent with *Schick v. Reed*, 419 U.S. 256 (1974), clemency orders must be implemented as written, with their terms binding unless they violate the Constitution or federal law. In this case, the commutation explicitly preserved the BOP's authority to comply with federal statutes, including its obligation to apply FTC under the First Step Act. By failing to integrate FTC into the recalculated sentence, the BOP has failed to honor the conditions explicitly set forth in the commutation order, as mandated by *Schick*, and has contravened its statutory obligations under the First Step Act.

22. Following the commutation order, the BOP recalculated the Petitioner's sentence to include Good Conduct Time (GCT) in compliance with 18 U.S.C. § 3624(b). However, the BOP failed to apply Petitioner's accrued FTC under 18 U.S.C. § 3632(d)(4), resulting in an inaccurate sentence computation and prolonged detention.

23. Despite multiple administrative inquiries from Petitioner, the BOP refused to apply FTC to his recalculated sentence. This failure persisted even though pre-commutation records confirmed Petitioner's FTC eligibility and accrued credits. See, Exhibit 'A' and Exhibit 'C.'.

24. The removal of Petitioner's FTC eligibility status represents an arbitrary and unjustified departure from pre-commutation records, further compounding the injury caused by the BOP's inaction. *Cf.* Exhibit A and Exhibit C.

25. On December 19, 2024, the Petitioner contacted the Designation and Sentence Computation Center (DSCC) regarding the failure to apply FTC. The DSCC disclaimed responsibility, stating that the FTC application falls under the purview of the BOP Central Office. *See*, Exhibit 'D' – *Email Chain*. The DSCC responded:

> "The eligibility/application of Federal Time Credits (FTC) under the First Step Act does not fall under the purview of the Designation and Sentence Computation Center. FTC is earned at the designated facility and applied by the Bureau's Central Office."

26.   That same day, the Petitioner forwarded the DSCC's response to the Residential Reentry Management (RRM) Office. The RRM Office replied that it would refer the matter back to the DSCC, creating a bureaucratic loop with no resolution. The RRM Office replied:

"I will send your information to the DSCC for their review." *Id.*

27.   Despite follow-up attempts, neither the DSCC nor the RRM Office acted to resolve the issue. See Exhibit 'E' – *DSCC Follow-Up and RRM Correspondence*.

28.   On January 2, 2025, Petitioner contacted the BOP Southeast Regional Office and senior officials at the BOP Central Office in Washington, D.C. Despite these efforts, no action was taken, and no responses were received. See Exhibit 'F' – *Southeast Regional Office Request and Requests to Central Office Officials*.

29.   As of the filing of this Petition, the BOP has failed to recalculate Petitioner's sentence to account for FTC. This omission has resulted in Petitioner's continued unlawful detention beyond his lawful release date of April 11, 2024, based on the proper application of FTC.

30.   The BOP's inaction violates (a) the mandatory provisions of the First Step Act, 18 U.S.C. §§ 3632(d)(4) and 3624(g); (b) BOP Policy Statement 5410.01, and (c) 28 C.F.R. § 571.41(a), which requires recalculation of sentences following commutations.

31.   This selective compliance also exacerbates existing disparities within the correctional system, disproportionately affecting inmates who rely on FTC for timely reintegration into society.

V.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

32.   While the general rule under 28 U.S.C. § 2241 requires the exhaustion of administrative remedies before seeking judicial relief, the D.C. Circuit has held that exhaustion is not an absolute requirement. Courts may excuse exhaustion where pursuing administrative

remedies would be futile or where the petitioner would suffer irreparable harm if required to exhaust. Courts may excuse exhaustion in habeas cases where pursuing administrative remedies would be futile or where irreparable harm would result. These exceptions are applied to ensure that judicial intervention is available when administrative remedies are ineffective or would result in undue harm. See *Deters v. United States Parole Comm'n*, 85 F.3d 655, 658 (D.C. Cir. 1996) (futility); *Franco v. Bureau of Prisons*, 828 F. App'x 573, 574 (D.C. Cir. 2020) (irreparable harm).

**Futility**

33. Petitioner's repeated attempts to address the failure to apply his earned time credits demonstrate the futility of pursuing further administrative remedies: a. On December 19, 2024, Petitioner contacted the Designation and Sentence Computation Center (DSCC), which disclaimed responsibility for applying FTC and stated that the BOP Central Office applies FTC. *See*, Exhibit 'D,' 'E' – Email Chain.

   a. On December 19, 2024, Petitioner contacted the Designation and Sentence Computation Center (DSCC), which disclaimed responsibility for applying Federal Time Credits (FTC) and stated that the BOP Central Office applies FTC. See Exhibit 'D', 'E' – *Email Chain.*
   b. That same day, the Petitioner contacted the Residential Reentry Management (RRM) Office, forwarding the DSCC's response. The RRM Office replied that it would forward the matter back to the DSCC, creating a bureaucratic loop with no resolution. *Id.*
   c. On January 2, 2025, Petitioner contacted the BOP Southeast Regional Office and two senior officials at the BOP Central Office in Washington, D.C., but received no response. See Exhibit 'F' – Southeast Regional Office Request and Requests to Central Office Officials.

34. The circular deflection of responsibility among BOP offices, coupled with the inaction of senior officials, demonstrates that further administrative efforts would be futile. Courts in the D.C. Circuit have held that exhaustion is not required where agency inaction renders further remedies ineffective or futile. See *Deters,* 85 F.3d at 658; see also *Franco,* 828 F. App'x at 574.

The BOP's inaction across multiple offices underscores the futility of further administrative remedies, as it evidences a pattern of deflection and non-responsiveness to legitimate inmate grievances.

**Irreparable Harm**

35. Petitioner's continued detention infringes upon his fundamental right to liberty, constituting irreparable harm that cannot be redressed post-release, as the time lost cannot be reclaimed. Courts have long recognized that habeas corpus provides the appropriate remedy when unlawful detention violates protected liberty interests. See *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("Habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement."); see also *Franco*, 828 F. App'x at 574 (excusing exhaustion where irreparable harm arose from extended detention).

36. The D.C. Circuit has excused exhaustion where agency delays or systemic failures render administrative remedies ineffective. See *Deters*, 85 F.3d at 657 (holding that exhaustion is unnecessary where delays frustrate effective relief). Here, the BOP's failure to act on Petitioner's multiple requests for relief demonstrates such systemic failure.

37. Petitioner has made good-faith efforts to exhaust available administrative remedies. However, the deflection of responsibility and inaction of the BOP offices render further attempts futile. Moreover, Petitioner's ongoing detention beyond his lawful release date constitutes irreparable harm. Accordingly, exhaustion should be excused in this case.

38. The failure of the BOP to address the Petitioner's earned time credits and recalculate his sentence has caused irreparable harm and prolonged his unlawful detention. Given the ongoing harm, Petitioner respectfully requests an expedited response under 28 U.S.C. § 2243 to prevent further injury.

## VI.   LEGAL CLAIMS

### GROUND ONE
**The Bureau of Prisons Has Violated the First Step Act, 18 U.S.C. §§ 3632(d)(4) and 3624(g).**

39. Petitioner realleges paragraphs 1 through 38 as if fully set forth herein.

40. The First Step Act, 18 U.S.C. § 3632(d)(4), provides that inmates who successfully participate in evidence-based recidivism reduction programs earn time credits. These credits must be applied to reduce the length of incarceration and facilitate early transfer to supervised release under 18 U.S.C. § 3624(g).

41. Congress expressly intended for the First Step Act to promote uniformity, fairness, and transparency in sentence calculations. By failing to apply FTC, the BOP undermines this intent and deprives Petitioner of a critical statutory benefit intended to incentivize rehabilitation and reduce recidivism.

42. Following the Presidential commutation of Petitioner's sentence on December 11, 2024, the BOP was required by 28 C.F.R. § 571.41(a) to recalculate Petitioner's sentence to reflect the terms of the commutation and ensure compliance with applicable federal law, including the First Step Act.

43. In *Schick*, the Supreme Court affirmed that clemency orders must be implemented as written and in accordance with existing laws. In this case, the commutation order explicitly preserved the BOP's authority to comply with federal laws, including the First Step Act. By failing to apply Petitioner's earned time credits, the BOP has undermined the principles articulated in *Schick* and ignored its statutory obligations.

44. While the BOP recalculated the Petitioner's sentence to include Good Conduct Time (GCT) under 18 U.S.C. § 3624(b), it arbitrarily and selectively failed to apply First Step Act Time Credits (FTC) under 18 U.S.C. § 3624(g). Both GCT and FTC are statutorily mandated

benefits, and their application must be consistent during sentence recalculations, absent explicit statutory or Presidential directives to the contrary. The BOP's failure to apply FTC while acknowledging GCT reflects an inconsistent and arbitrary approach to statutory compliance. This inconsistent application of statutory credits demonstrates a lack of uniformity and violates the statutory framework designed to ensure fairness and predictability in sentence recalculations.

45. BOP Policy Statement 5410.01 mandates that the first 365 days of FTC must be applied to advance an inmate's transfer to supervised release before considering other prerelease custody options, such as home confinement or placement in Residential Reentry Centers (RRC). This policy underscores the mandatory nature of the FTC application, which the BOP failed to follow in the Petitioner's case. This failure to apply FTC not only creates a disparate treatment of statutorily mandated credits but also disrupts the legal consistency required in sentence recalculations, leading to prolonged detention in contravention of federal law..

46. Petitioner earned sufficient FTC through participation in evidence-based recidivism reduction programs, qualifying him for early transfer to supervised release by up to 12 months. Under 18 U.S.C. § 3624(g)(2), eligible prisoners "shall" be placed in prerelease custody or supervised release once they have earned sufficient time credits. The statute's mandatory language creates a clear entitlement to early transfer, which the BOP has failed to honor. The language of 18 U.S.C. § 3624(g)(2) is unequivocal—eligible prisoners 'shall' be transferred to prerelease custody or supervised release once they have earned sufficient time credits. This mandatory language creates a clear legal entitlement that the BOP has failed to honor.

47. The mandatory application of GCT under 18 U.S.C. § 3624(b) requires recalculating the Petitioner's sentence to reflect the credit earned for exemplary behavior. This GCT, when applied alongside FTC, ensures that prisoners who meet the statutory criteria for early

11

release receive the full benefit of their credits, as mandated by Congress. The BOP's failure to apply both GCT and FTC demonstrates its disregard for statutory requirements and deprives Petitioner of a timely release.

48. Despite these statutory and regulatory obligations, the BOP failed to properly recalculate Petitioner's sentence or apply his earned FTC. If properly applied, these credits would have advanced Petitioner's release date to April 11, 2024, or, at the latest, the date of his commutation, December 11, 2024.

49. The BOP's application of GCT demonstrates its acknowledgment of its statutory duty to comply with federal law when recalculating commuted sentences. However, its failure to apply FTC represents a selective and inconsistent application of statutory mandates, resulting in prolonged and unlawful detention for the Petitioner.

50. Failing to comply with the First Step Act's mandatory provisions and the BOP's regulations has deprived Petitioner of his statutory right to an early transfer to supervised release.

51. By unlawfully withholding FTC, the BOP has violated 18 U.S.C. §§ 3632(d)(4) and 3624(g), 28 C.F.R. § 571.41(a), and BOP Policy Statement 5410.01. This failure reflects an arbitrary disregard for federal statutory mandates and the intent of the First Step Act to incentivize and reward meaningful rehabilitation efforts.

## GROUND TWO
### The Bureau of Prisons' Actions Are Arbitrary and Capricious, Violating the Administrative Procedure Act, 5 U.S.C. § 706.

52. Petitioner realleges paragraphs 1 through 38 as if fully set forth herein.

53. The Administrative Procedure Act (APA) requires that federal agency actions must not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. § 706(2)(A). The APA also compels agencies to act on matters within their statutory

responsibilities and prohibits unlawful withholding or unreasonable delays of required actions. See 5 U.S.C. § 706(1).

54. The Bureau of Prisons (BOP) failed to apply Petitioner's statutorily earned First Step Act (FSA) time credits (FTC) during the recalculation of his sentence, in violation of its statutory duty under 18 U.S.C. § 3632(d)(4). This failure has directly resulted in the unlawful prolongation of Petitioner's detention, contrary to federal law. The BOP's removal of FTC eligibility from Petitioner's profile, without notice or an opportunity to contest the decision, violates the principles of reasoned decision-making and transparency required under the APA. Agencies are obligated to provide explanations for actions impacting individual rights, especially statutory entitlements like FTC.

55. FTC under the First Step Act is mandatory. The statute unequivocally states that earned time credits 'shall be applied' to reduce incarceration length and facilitate early transfer to supervised release or prerelease custody for eligible individuals. The mandatory language demonstrates Congress's intent to create a statutory entitlement, leaving the BOP with no discretion to withhold FTC once earned.

56. Following the Presidential commutation of Petitioner's sentence on December 11, 2024, the BOP applied Good Conduct Time (GCT) in compliance with federal law. However, the agency failed to apply FTC despite both being mandatory statutory credits intended to reduce the duration of incarceration. This inconsistent treatment of GCT and FTC exemplifies arbitrary and capricious decision-making. This action also contravenes procedural fairness under the APA, as the Petitioner was denied notice and an opportunity to contest the removal of FTC eligibility, violating principles of transparency and accountability mandated by federal law.

57. The BOP removed the Petitioner's First Step Act eligibility status from his profile without justification, notice, or explanation. This action is inconsistent with pre-commutation records confirming Petitioner's eligibility and accrued FTC, as reflected in the Pre-Commutation Sentence Computation. The removal of eligibility status further evidences the BOP's arbitrary disregard for its statutory responsibilities.

58. The BOP violated procedural fairness, transparency, and accountability principles by altering Petitioner's FTC eligibility status and removing his time credits without notice or explanation. Agencies must provide reasoned explanations for decisions that impact individual rights, particularly when such decisions conflict with pre-existing records confirming eligibility.

59. BOP Policy Statement 5410.01 specifically mandates that FTC be applied before considering other forms of custody adjustments, such as home confinement or placement in a Residential Reentry Center (RRC). The BOP's failure to follow its own established policies demonstrates its disregard for lawful decision-making processes and undermines its credibility.

60. Despite multiple administrative inquiries from the Petitioner to address the failure to apply FTC, the BOP has taken no corrective action. The prolonged delay in recalculating the Petitioner's sentence reflects a systemic disregard for timely and lawful agency action, exacerbating harm to inmates and undermining the BOP's credibility as a federal agency entrusted with statutory compliance.

61. The BOP's selective application of GCT while withholding FTC undermines the rehabilitative and reintegration goals Congress sought to achieve through the First Step Act. The inconsistent treatment of statutory credits reflects arbitrary and capricious decision-making, which violates the Administrative Procedure Act and disregards the clear intent of 18 U.S.C. §§ 3624(b) and 3624(g). This pattern of inconsistent and selective compliance not only harms Petitioner but

also undermines the broader statutory framework of the First Step Act, creating systemic inequities among inmates who rely on earned credits for timely reintegration.

62. The BOP's failure to act transparently—removing Petitioner's FTC eligibility status without notice or explanation and withholding FTC without justification—violates fairness and accountability principles. Agencies are required under the APA to provide reasoned explanations for their decisions, particularly when statutory rights are at stake.

63. By unlawfully withholding FTC, the BOP has effectively undermined the statutory framework of the First Step Act, prolonged Petitioner's incarceration, and deprived him of a significant liberty interest.

64. These actions and omissions constitute behavior that is both arbitrary and capricious under 5 U.S.C. § 706(2)(A) and unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1).

65. As a result of the BOP's violations, Petitioner has been subjected to unlawful and prolonged detention in direct contravention of federal law, established agency policies, and the rehabilitative objectives of the First Step Act.

### GROUND THREE
**The Bureau of Prisons' Failure to Act Violates Petitioner's Constitutional Right to Liberty.**

66. Petitioner realleges paragraphs 1 through 38 as if fully set forth herein.

67. The Fifth Amendment's Due Process Clause protects individuals from deprivations of liberty without due process of law. Federal courts have consistently held that agencies must act within their statutory and regulatory obligations to avoid violating due process. See *Deters* (noting that failure to act within statutory duties can give rise to due process claims). Federal courts have long held that liberty interests, particularly those involving release from incarceration, are

fundamental rights protected by the Due Process Clause. The BOP's actions have directly infringed upon these interests.

68. In *Schick v. Reed*, 419 U.S. 256 (1974), the Supreme Court affirmed that clemency orders must not supersede or negate statutory entitlements unless explicitly stated. Here, the commutation order did not revoke Petitioner's eligibility for earned time credits (FTC) under the First Step Act. Instead, it expressly preserved the Bureau of Prisons (BOP) authority to oversee Petitioner's confinement and comply with federal laws. Despite its clear statutory duty, the BOP's failure to apply FTC constitutes an unlawful deviation from its obligations and contravenes the principles articulated in *Schick*. By failing to comply with the statutory requirements of the First Step Act, the BOP not only violates the conditions of clemency but also denies the Petitioner procedural protections necessary to safeguard his liberty interests, a fundamental right under the Due Process Clause. By failing to comply with the statutory requirements of the First Step Act, the BOP denies the Petitioner procedural protections necessary to safeguard his liberty interests under the FTC and GCT frameworks.

69. Petitioner's earned time credits (FTC) under the First Step Act (18 U.S.C. § 3632(d)(4)) create a statutory entitlement that directly impacts the length of his incarceration. The BOP's failure to apply FTC as required by law has unlawfully prolonged the Petitioner's confinement and infringed upon his liberty interests protected by the Due Process Clause.

70. Under the First Step Act and the terms of the commutation order, Petitioner was entitled to transfer to supervised release on or before April 11, 2024, based on the proper application of his earned time credits. The BOP's failure to apply these credits, despite clear statutory and regulatory mandates, has subjected Petitioner to continued incarceration beyond the date he was legally entitled to transfer to supervised release.

71. The Bureau of Prisons' failure to act violates procedural due process. The Supreme Court has emphasized that procedural safeguards are required when liberty interests are at stake, particularly in the context of incarceration and release. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (holding that due process requires procedural protections when the government deprives an individual of a constitutionally protected liberty or property interest).

72. The application of FTC is neither discretionary nor optional under the First Step Act. The BOP's failure to properly calculate and apply Petitioner's credits deprived him of his statutory and constitutional right to a timely release, in direct contravention of the procedural protections mandated by the Due Process Clause.

73. The BOP's actions are especially egregious given its selective compliance with statutory requirements. By applying GCT under 18 U.S.C. § 3624(b) to Petitioner's sentence while disregarding FTC under 18 U.S.C. § 3624(g), the BOP arbitrarily denies Petitioner the benefits of both statutory frameworks. This selective treatment creates an arbitrary deprivation of liberty, violating the procedural safeguards intended to protect inmates under the Due Process Clause. The BOP's selective treatment of GCT and FTC creates an arbitrary deprivation of liberty, contravening procedural safeguards intended to protect inmates under the Due Process Clause of the Fifth Amendment.

74. The BOP's actions have deprived Petitioner of his constitutionally protected liberty interest in a timely release, an interest recognized by the Supreme Court as fundamental to due process. See *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The ongoing deprivation of this interest warrants immediate judicial intervention."

75. The ongoing failure to act and the resulting prolongation of Petitioner's incarceration represent an unlawful deprivation of liberty without the procedural protections required by the Fifth Amendment.

76. The Bureau of Prisons' actions, or lack thereof, constitute a clear violation of Petitioner's due process rights and have caused significant and ongoing harm by unlawfully depriving him of the liberty to which he is entitled under federal law.

### VII.  REQUESTED RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court:

- Issue a writ of habeas corpus ordering Respondents to:
    - Immediately recalculate Petitioner's sentence to apply earned time credits under the First Step Act and effectuate his immediate release from custody.
- Pursuant to 28 U.S.C. § 2243, order Respondents to show cause within 3 days why the writ of habeas corpus should not be granted.
- Issue declaratory relief affirming that the Bureau of Prisons must apply earned time credits in compliance with the First Step Act and promptly recalculate sentences following commutations.
- Declare that the BOP's failure to apply earned time credits and recalculate Petitioner's sentence is unlawful.
- Declare that Presidential commutations, as issued in this case, do not override or negate an inmate's accrued earned time credits under the First Step Act, and the BOP is obligated to apply such credits in compliance with federal law. Further, the BOP should be directed to implement systemic reforms to ensure timely recalculations of FTC and GCT for all eligible inmates.
- This Court should further direct the BOP to implement comprehensive reforms to ensure consistent and timely application of FTC for all eligible inmates, thereby aligning its practices with the statutory mandates of the First Step Act and principles of fairness.

- Recommend that the sentencing court consider the time spent in custody due to the Bureau of Prisons' failure to act as time credited toward Petitioner's supervised release term under 18 U.S.C. § 3583(e) towards early termination.
- Grant such other relief as this Court deems just and proper.

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Dated: January 6, 2025

Respectfully submitted,

*[signature]*

Sonny Ramdeo